T.C. Memo. 2019-104

UNITED STATES TAX COURT

RONNIE HAIRSTON AND GLORIA CRUZ HAIRSTON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20372-17.                              Filed August 20, 2019.

Ronnie Hairston and Gloria Cruz Hairston, pro sese.

<u>Stephen C. Welker</u> and <u>Bartholomew Cirenza</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LAUBER, <u>Judge</u>:  With respect to petitioners' Federal income tax for 2014,

the Internal Revenue Service (IRS or respondent) determined a deficiency of

$7,341 and an accuracy-related penalty of $1,468.  Respondent having conceded

the penalty, the question remaining for decision is whether petitioners were enti-

tled to offset against their ordinary income for 2014 a rental real estate loss of

**[\*2]** $27,488.  That offset would be allowable only if one of them qualified as a "real estate professional."  See Moss v. Commissioner, 135 T.C. 365, 368 (2010) (discussing section 469(c)(7)(B)).[1]  Finding that neither of them devoted the requisite 750-plus hours to real estate activity during 2014, we answer that question in the negative and accordingly sustain respondent's disallowance of the loss deduction.

FINDINGS OF FACT

The parties filed a stipulation of facts with accompanying exhibits that is incorporated by this reference.  Petitioners resided in Maryland when they petitioned this Court.

At some time before 2013 petitioners purchased two contiguous rental properties in Glenn Dale, Maryland:  6330 Bell Station Road (6330 Bell) and 6340 Bell Station Road (6340 Bell) (collectively, rental properties).  Petitioners resided in a home immediately adjacent to the rental properties.

Each rental property consists of a single-family home located in the middle of a 1.5-acre lot.  Each lot has a few large trees, a surrounding fence, and a gravel driveway about 50 feet long.  Each property has a shed, and 6340 Bell has an un-

---

[1]All statutory references are to the Internal Revenue Code in effect during the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  We round all monetary amounts to the nearest dollar.

[*3] attached six-car garage.  Neither property has any sidewalks apart from a short path connecting the driveway to the house.

A long-term tenant occupied 6340 Bell throughout 2014.  Another long-term tenant occupied 6330 Bell until October 2014, when petitioners evicted her for failure to pay rent.  The latter property remained vacant until December 19, 2014, when petitioners executed a lease with a new tenant.  During the time 6330 Bell was vacant, petitioners performed maintenance on the property, advertised it, fielded questions from prospective tenants, showed the property to applicants, and screened applicants with credit reports and background checks.

The three leases in effect during 2014 had similar terms, with variations concerning the stated rent, late fees, and security deposits.  The tenants agreed to pay monthly rent in cash or by check made out to Mrs. Hairston, to pay utility charges, and to perform minor house repairs.  The tenants also agreed to maintain the yard and surrounding area by removing yard waste and keeping the paths to the driveways free of snow and debris.

The tenant at each property had rights to use the shed, but petitioners reserved primary rights to use the garage at 6340 Bell.  Petitioners parked their vehicles in that garage and used it as storage space for Mr. Hairston's tools.  The

[*4] tenant at 6340 Bell had limited access to the garage for storage purposes, but only with petitioners' permission.

Both petitioners performed tasks in connection with the rental activity. Mrs. Hairston, who worked full time for the Department of Homeland Security, handled most financial and administrative tasks, such as keeping books and depositing rent checks. She also performed most tasks related to securing new tenants, including market research, advertising, reviewing rental applications, and preparing leases. She generally met prospective tenants who came to view the properties during the evening or on weekends.

Mr. Hairston, who had retired before 2014, was primarily responsible for upkeep of the two properties. He performed some of this work himself (e.g., cutting grass and removing snow) but secured contractors for major repairs and maintenance. He picked up rent checks from tenants and fielded questions from prospective tenants on weekdays when his wife was at work.

During 2014 Mr. Hairston supervised contractors who replaced carpet and painted the interior of 6330 Bell while it was vacant. In each case he met the contractors at the house and (according to his testimony) remained onsite until they finished their work. But he did not participate in any of this work himself.

**[*5]**  Petitioners jointly filed for 2014 a timely Form 1040, U.S. Individual Income Tax Return.  They reported total adjusted gross income (AGI) of $202,409, of which $9,648 represented taxable Social Security benefits.  They included with their return a Schedule E, Supplemental Income and Loss, which reported the following amounts:

|  | 6330 Bell | 6340 Bell | Total |
|---|---|---|---|
| Rents received | $12,000 | $18,000 | $30,000 |
| Expenses | 30,029 | 27,459 | 57,488 |
| Income or (loss) | (18,029) | (9,459) | (27,488) |

Petitioners claimed the entire $27,488 loss as an offset to income on line 17.

The IRS selected petitioners' 2014 return for examination and determined that neither of them qualified as a "real estate professional."  It accordingly issued a notice of deficiency that disallowed the $27,488 loss deduction and determined an accuracy-related penalty.  Petitioners timely petitioned this Court, contending that at least one of them qualified as a "real estate professional."  Respondent conceded the penalty before trial.

**[*6]**                    OPINION

A.    Burden of Proof

Deductions are a matter of legislative grace, and taxpayers generally bear the burden of proving their entitlement to all deductions claimed. Rule 142(a). Taxpayers bear the burden of substantiating their claimed deductions by keeping and producing records sufficient to enable the IRS to determine the correct tax liability. Sec. 6001; INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); sec. 1.6001-1(a), (e), Income Tax Regs. Petitioners do not contend that they have satisfied the requirements of section 7491(a) for shifting the burden of proof. See Rule 142(a)(2). The burden of proof thus remains on them with respect to all factual issues.

B.    Analysis

Section 469(a) generally disallows a current deduction for a "passive activity loss" incurred by an individual. Generally, rental activity is "passive" regardless of the taxpayer's actual participation in it. See sec. 469(c)(1), (2), (4). But certain rental activity undertaken by a so-called "real estate professional" is excepted from this rule. See Moss, 135 T.C. at 368.[2]

_____

[2]Taxpayers who do not qualify as real estate professionals may deduct up to $25,000 of losses attributable to rental real estate activities in which they "actively

(continued...)

**[\*7]**   To qualify as a real estate professional, a taxpayer generally must "per-form[] more than 750 hours of services during the taxable year in real property trades or businesses in which the taxpayer materially participates."  Sec. 469(c)(7)(B)(ii).[3]  For taxpayers filing a joint return, at least one spouse must independently satisfy the 750-hour requirement.  Id. subpara. (B) (flush language); see Oderio v. Commissioner, T.C. Memo. 2014-39, 107 T.C.M. (CCH) 1214, 1215. The "material participation" requirement applies separately to each interest in rental real estate unless the taxpayer has made an election to treat all real estate activities as a single activity.  See sec. 1.469-9(e)(1), Income Tax Regs.

In his post-trial brief respondent does not dispute that petitioners elected to treat their properties as a single activity or that they "materially participate[d]" in the rental activity.  See id. para. (g) (providing that a prior-year election is binding for future years in which the taxpayer qualifies).  For their part petitioners concede

---

[2](...continued)
participated."  Sec. 469(i)(1).  But this deduction begins phasing out when AGI reaches $100,000 and is totally phased out when AGI reaches $150,000.  See sec. 469(i)(3)(A).  For this purpose, AGI is determined without regard to taxable Social Security benefits and certain other items.  Petitioners were unable to deduct any losses under section 469(i)(1) because their AGI (excluding taxable Social Security benefits) exceeded $150,000.

[3]Section 469(c)(7)(D)(i) sets forth a special rule for taxpayers that are closely held C corporations.

[*8] that they cannot combine their respective hours of participation to reach the required 750-hour total. But they contend that they have substantiated sufficient hours to enable Mr. Hairston by himself to qualify as a real estate professional for 2014. We disagree.

A taxpayer may substantiate the required 750 hours of participation by any reasonable means, but a "ballpark guesstimate" will not suffice. Moss, 135 T.C. at 369. In the absence of "[c]ontemporaneous daily time reports, logs, or similar documents," the extent of participation may be established by "the identification of services performed over a period of time and the approximate number of hours spent performing such services during such period, based on appointment books, calendars, or narrative summaries." Sec. 1.469-5T(f)(4), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988).

Petitioners produced a calendar for each rental property that purports to show the number of hours worked each day. Together the calendars include 360 separate entries. Each entry describes a task and the hours allegedly consumed in performing that task, without indicating which petitioner did the work. The handwriting on all entries seems identical. Some of these entries were recorded on the day of performance, but most were made at the end of the week or later.

**[\*9]** The parties agree that the calendars show for the two properties a total of no more than 932 recorded hours, but they disagree initially as to which hours and tasks are attributable to which petitioner. Petitioners at trial identified who performed certain tasks (e.g., mowing grass and removing snow). But many entries are ambiguous in this respect.

In his post-trial brief respondent allocated the recorded hours between petitioners on the basis of their testimony concerning their general division of labor. Respondent thus attributed 170 of the recorded hours to tasks performed by Mrs. Hairston, 669 hours to tasks performed by Mr. Hairston, and 93 hours to tasks that could be attributable to either of them. If all the uncertain hours in respondent's calculation were put on Mr. Hairston's side of the ledger, his share of the recorded hours would be 762. Petitioners urge that his total should be increased to 781.

Assuming the best-case scenario for petitioners, whereby 781 recorded hours are deemed attributable to Mr. Hairston, we find that they have not satisfied their burden of proof. We find the hours recorded on the calendars to lack credibility for several reasons:

• Every task recorded on the calendars, no matter how trivial, is listed as having taken at least one hour to complete. Of the 360 recorded entries, 121 (or roughly one-third) record tasks that allegedly consumed exactly one hour. These

[*10] include 36 entries for doing nothing more than receiving a rent payment, issuing a receipt for a payment, or depositing a check at the bank. There are 13 distinct one-hour entries for "paying mortgage." There are 11 distinct one-hour entries--all of which petitioners attribute to Mr. Hairston--for "hunting down" or "remind[ing]" the tenant to pay rent. Three of these entries appear in the same week, including two on the same day. There are nine distinct one-hour entries for "inspecting vacant property," i.e., walking next door to 6330 Bell to make sure it had not been broken into. This pattern of inflating recorded hours undermines the credibility of petitioners' calendars overall.

   • A similar inflationary pattern emerges from petitioners' accounting for snow removal activities, which allegedly consumed between 93 and 105 hours during 2014. To begin with, petitioners appear to have had no obligation to undertake snow removal for their tenants under the terms of the leases they drafted. One-third of the purported hours--31 hours in February 2014--were recorded in a five-day span during which Mr. Hairston allegedly spent 13 hours "prepar[ing] for snow storm," 15 hours doing snow removal, and another 3 hours "deicing." At trial petitioners sought to explain this large time commitment by asserting that many hours were needed to clear snow from the driveway to the six-car garage. But neither tenant had any material right to use the garage, which petitioners used

[*11] to store their own vehicles and Mr. Hairston's tools. We infer that most of the time spent clearing snow from that driveway was for petitioners' own benefit.

• An inflationary pattern also emerges from the calendar entries recording time that Mr. Hairston allegedly spent supervising contractors. He recorded many hours during which he allegedly watched contractors work, including 33 hours while they installed and cleaned carpet. During one week in December, he recorded another 40 hours "supervising" contractors who were painting the interior of 6330 Bell. We understand that Mr. Hairston, having recently retired, had time on his hands. But we cannot believe that he spent an entire week watching paint dry.

In any case, we think little of the time Mr. Hairston spent watching contractors qualifies as "work perform[ed]." See sec. 1.469-9(b)(4), Income Tax Regs. Assuming arguendo that he actually stayed on the premises every moment the contractors were there, he did not do this at the request of (or to benefit) tenants. The contractors did most of their work at 6330 Bell, which was vacant, and petitioners could not explain why Mr. Hairston needed to be on site for 40 hours that week. We conclude that he was at best "on call" to answer questions from the contractors and lock the house when they finished. "On call" hours do not count towards the 750-hour requirement because no services have in fact been performed. See Moss, 135 T.C. at 370; sec. 1.469-9(b)(4), Income Tax Regs. ("Personal

**[\*12]** services means any work <u>performed</u> by an individual in connection with a trade or business." (Emphasis added.)).

Having heard petitioners' testimony and reviewed the record as a whole, we conclude that the 781 recorded hours they attribute to Mr. Hairston were inflated by at least 150 hours, most likely more. They have accordingly failed to carry their burden of proving that either of them satisfied the 750-hour service requirement that a taxpayer must meet to qualify as a "real estate professional." Because section 469 precludes deduction of their passive activity loss, we sustain respondent's disallowance of the $27,488 deduction they claimed.

To implement the foregoing,

<u>Decision will be entered for respondent as to the deficiency and for petitioners as to the penalty</u>.